AMERICAN PLYWOOD ASSOCIATION, PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND MACMILLAN BLOEDEL INC., PARTY-IN-INTEREST

Court No. 83–01–00099

(Decided June 22, 1993)

*Lane Powell Moss & Miller (Richard F. Allen* and *Scott F. Campbell)* for the plaintiff.
*Stuart E. Schiffer,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice *(Saul Davis)* for the defendant.
*Dorsey & Whitney (John B. Rehm* and *Munford Page Hall, II)* for the party-in-interest.

## OPINION

AQUILINO, *Judge:* This action has been brought by the plaintiff trade association pursuant to 28 U.S.C. § 1581(b) to contest the decision of the U.S. Customs Service pursuant to 19 U.S.C. § 1516(c), published as T.D. 83–89, 17 Cust. Bull. & Dec. 190 (1983), to continue to classify certain imported plywood panels[1] under item 245.80 of the Tariff Schedules of the United States ("TSUS").

---

[1] As consignee of such merchandise, MacMillan Bloedel Inc. has availed itself of the right under 19 U.S.C. § 1516(e) to appear in this action as a party in interest.

## I

The matter is before the court upon the parties' Stipulation of Facts in Lieu of Trial, paragraph 8 of which characterizes the merchandise in question as "reverse board and batten SR 12 O.C. S/L (cedar centers)." Paragraph 17 provides further that this board

> (a) is a panel of rigid construction of wood veneers assembled and bonded together with adhesive substances having a face ply of soft-wood (cedar) and a central ply or core of wood veneer with one or more plies of wood veneer on each side thereof, the grain of each ply being at an angle with the grain of each adjacent ply[;]
> (b) has (i) a rabbetted edge to prevent water from penetrating between the panel edges, and which masks the joint between panels, (ii) a rough-sawn appearance to enhance its appeal as an exterior siding, and (iii) vertical grooves to suggest separate lumber planks, a typical form of exterior siding;
> (c) is sold in panels of rigid construction; and
> (d) is chiefly used in the construction of walls, ceilings and/or other parts of buildings.

And paragraph 11 stipulates the issue before the court to be

> whether the Merchandise properly is classified and dutiable as ply-wood under TSUS Item 240.21, or as building boards under TSUS Item 245.80, *i.e.,* whether the Merchandise is within the statutory definition of "plywood" contained in Schedule 2, Part 3, headnote 1(b) of the TSUS.

## II

The headnote referred to, namely, 1(b) of Part 3 (Wood Veneers, Plywood, and Other Wood-Veneer Assemblies and Building Boards) to Schedule 2 (WOOD AND PAPER; PRINTED MATTER) defined plywood as follows:

> Rigid wood-veneer assemblies bonded together with adhesive substances having a central ply or core of wood veneer or lumber with one or more plies of wood veneer on each side thereof, the grain of at least one ply being at an angle (usually a right angle) with the grain of one or more of the other plies, including such assemblies the face ply (or plies) of which has been mechanically scored, striated, or similarly processed[.]

As the above issue indicates, the plaintiff takes the position that the merchandise should be classified per TSUS item 240.21 as "[p]lywood, whether or not face finished, * * * [w]ith a face ply of softwood" instead of under item 245.80:

> Building boards not specially provided for, whether or not face finished:
>> Laminated boards bonded in whole or in part, or impregnated, with synthetic resins.

A

The Customs Courts Act of 1980 provides that a decision by the Service of the kind at issue herein is presumed to be correct and that the burden of proving otherwise shall rest upon the party challenging such decision. 28 U.S.C. § 2639(a)(1).

In attempting to satisfy this burden, the plaintiff refers to TSUS General Interpretive Rule 10(c), which stated that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it". The plaintiff argues that, "[w]here a product can be included in both an eo nomine classification and a use classification containing the words 'not specially provided for,' the eo nomine category is more specific and must control." Plaintiff's Brief, p. 20, citing *United States v. Lansen-Naeve Corp.,* 44 CCPA 31, 33, C.A.D. 632 (1957):

> It has been repeatedly held by this court that, subject to clearly shown contrary legislative intent, a "not specially provided for" clause in a use provision excludes therefrom articles enumerated elsewhere by descriptive or *eo nomine* designation.

And the plaintiff relies extensively on *B.A. McKenzie & Co. v. United States,* 47 CCPA 42, C.A.D. 726 (1959), *Borneo Sumatra Trading Co. v. United States,* 64 Cust. Ct. 185, C.D. 3980, 311 F.Supp. 326 (1970), and *C.T. Takahashi & Co. v. United States,* 74 Cust.Ct. 38, C.D. 4583 (1975), each of which discussed at length the nature and the meaning of plywood.

This court cannot add to that learned discourse, but it does note that, in each case, the provision at issue was paragraph 405 of the Tariff Act of 1930, as modified by T.D. 52739, to wit, "Plywood". In *McKenzie,* the court of appeals pointed out that, "[w]here a provision of the Tariff Act names an article without terms of limitation, as does the *eo nomine* provision for plywood in paragraph 405, all forms of the article are thereby included." 47 CCPA at 45.

In this action, plaintiff's preferred provision, item 240.21, covers plywood, "whether or not face finished". In an action similar to this, *American Hardboard Ass'n v. United States,* 12 CIT 714, 716 (1988), the court did not find the phrase "whether or not face finished"

> to be restrictive language excluding from the *eo nomine* provision forms of hardboard which have undergone processing other than that defined as face finishing.

Nonetheless, the court went on to state that the

> legislative history indicates that at some point the material designated as hardboard and provided for *eo nomine* under item 245.30, TSUS, may no longer be within that classification because it has been advanced beyond a basic, fungible material and has become a new and different article of commerce.
>
> Considering hardboard as a basic material which becomes another product due to advancements is analogous to those cases in-

volving the question of whether merchandise made from lumber is classifiable as lumber or as some new article of commerce made from lumber. *See, e.g., Permagrain Prods. Inc. v. United States,* 9 CIT 426, 623 F.Supp. 1246 (1985), *aff'd,* 4 Fed.Cir. (T) 87, 791 F.2d 914 (1986).

Also, in *All Channel Prods. Corp. v. United States,* 1 CIT 128 (1981), the court noted that although an *eo nomine* provision covers all forms and varieties of the named commodity, there is a point where the addition of parts and functions transforms the object into something else. * * *

    *        *        *        *        *        *        *

The Court finds the legislative history limits the *eo nomine* provision for hardboard to a basic, fungible material, and the determination whether particular merchandise is covered *eo nomine* under item 245.30, TSUS, depends on the factual advancements unique to that particular product made of hardboard.

12 CIT at 716, 717.

## B

In *McKenzie, supra,* the imported plywood was manufactured and sold as face panels for use on doors in varying widths and lengths. The courts concurred with Customs that those "door-skins", cut to approximately one-half inch of the outer dimensions, were but rectangular shapes of plywood, properly classifiable within the *eo nomine* designation of paragraph 405. In *Takahashi,* the merchandise consisted of plywood panels with grooves cut lengthwise into them in the shape of the letter V. The court concluded that those grooves were merely "decorative" and therefore did not require classification other than plywood.

In contrast, according to the parties' stipulation, paragraph 15, each panel herein

is passed through a specialized machine that (i) with a chain saw, gives the cedar face ply of the panel a rough-sawn appearance, (ii) with a set of revolving blades, cuts grooves into the face of the panel along its length, and (iii) with revolving cutting blades, cuts the edges along the length of the panel to create rabbetted (a form of shiplapping) edges.[2]

And the defendant thus argues at pages 21–22 of its brief:

* * * The only panels in issue in this case are the panels with shiplapped edges * * * [, which] are unique in their use as exterior siding because the sole reason for the rabbetted edge is:

to prevent water from penetrating between the panel edges, and [to mask] the joint between the panels.

Stipulation, at paragraph 17(b)(1).

---

[2] A rabbet is defined as:

1. A groove cut into a part. 2. A strip applied to a part as, for example, a stop or seal. 3. A joint formed by fitting one member into a groove, channel, or recess in the face or edge of a second member.

McGraw-Hill Dictionary of Scientific and Technical Terms 1543 (4th ed. 1989).

This court can infer from the stipulation that the combination of water penetration prevention and uneven surface due to the shiplapping dedicates this siding solely for use as exterior siding— there is no need for shiplapped edges and water penetration prevention (*i.e.,* from rain and snow) if these panels were used indoors.

In *American Hardboard Ass'n, supra,* the court concluded:

* * * [T]he merchandise is face finished hardboard cut to size and machined to specifications (rabbetted). A plastic spline has been permanently attached which makes the article suitable only for use as interlocking siding in construction. The Court finds the lap siding has been advanced beyond the basic, fungible material known as hardboard and is therefore not classifiable under item 245.30, TSUS.

12 CIT at 717. Following this line of reasoning, based as it is on the same kind of rabbetting, the court concludes that the merchandise herein has been advanced beyond the basic, fungible material known as plywood and therefore was not classifiable under item 240.21, TSUS.

### III

In conclusion, the plaintiff has failed to overcome the presumption of correctness of Customs classification of the goods under item 245.80 of the TSUS, and judgment must therefore enter for the defendant.